Citation Nr: 1761214 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 11-18 461 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to an increased rating in excess of 10 percent for right knee infrapatellar tendonitis.

2. Entitlement to an increased rating in excess of 10 percent for left knee infrapatellar tendonitis.

3. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

D.M. Casula, Counsel 
INTRODUCTION

The Veteran had active service from April 1971 to April 1975.

The appeal to the Board of Veterans' Appeals (Board) arises from a September 2009 rating decision of the Department of Veteran Affairs (VA) Regional Office (RO) in Huntington, West Virginia. Jurisdiction was subsequently transferred to the RO in Detroit, Michigan.

In June 2014, April 2016, and May 2017 the Board remanded the appeal for additional development. 


FINDINGS OF FACT

1. The Veteran's right knee infrapatellar tendonitis has been manifested by pain; however, the competent evidence of record does not demonstrate limitation of knee extension or flexion, malunion of the tibia and fibula, dislocated or removed semilunar cartilage, frequent episodes of locking or effusion, ankylosis of the knee, or objective evidence of subluxation or instability.

2. The Veteran's left knee infrapatellar tendonitis has been manifested by pain; however, the competent evidence of record does not demonstrate limitation of knee extension or flexion, malunion of the tibia and fibula, dislocated or removed semilunar cartilage, frequent episodes of locking or effusion, ankylosis of the knee, or objective evidence of subluxation or instability.

3. The most probative evidence of record demonstrates that the Veteran's service-connected disabilities do not render him unable to secure or follow substantially gainful employment.




CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for right knee infrapatellar tendonitis have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010, 5257, 5260, 5261, 5262 (2017).

2. The criteria for a rating in excess of 10 percent for left knee infrapatellar tendonitis have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010, 5257, 5260, 5261, 5262 (2017).

3. The criteria for the assignment of a TDIU rating have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.16, 4.19 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See e.g. 38 U.S.C.A. §§ 5103, 5103A and 38 C.F.R. § 3.159. For the issues decided in the instant document, VA provided adequate notice in a letter sent to the Veteran in January 2009.

The Board also finds VA has satisfied its duty to assist the Veteran in the development of the claims. VA has obtained all identified and available service and post-service treatment records for the Veteran, and VA examinations were conducted in 2009, 2014, and 2017. It appears that all obtainable evidence identified by the Veteran relative to his claims has been obtained, and neither he nor his representative has identified any other pertinent evidence which would need to be obtained for a fair disposition of this appeal. Also, neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument). In summary, the Board finds that appellate review may proceed without prejudice to the Veteran with respect to his claims. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

II. Factual Background

On a VA examination in January 2009, the Veteran reported having increased pain and decreased range of motion since his last VA examination in 2005. He reported he had fallen due to his knee condition. He also reported he was terminated in September 2008 from his last position as a mortgage underwriter. His knee condition had progressively worsened, and his current treatment included medication, physical therapy, and bracing. In December 2008 he was prescribed Hydrocodone with Acetaminophen, every 6 hours, as needed for pain, and in August 2008, he was prescribed Etodolac, twice a day, for pain. His response to treatment was described as fair. The summary of joint symptoms included giving way, pain and stiffness, and decreased speed of joint motion in both knees. He wore bilateral knee braces always, stating that his knee braces improved his ability to stand for longer periods of time. Examination revealed that a weight-bearing joint was affected, and the Veteran had an antalgic gait, favoring the left knee, but no other evidence of abnormal weight bearing. Examination of the knees revealed crepitation and subpatellar tenderness. Range of motion testing of both knees revealed normal range of motion, with flexion to 140 degrees and extension to 0 degrees. After repetitive motion testing, the Veteran had pain but no additional limitations. It was noted that he also had pain and crepitus on full extension, and had to be encouraged to fully extend both knees. The Veteran was observed walking without braces approximately 100 feet, and he achieved full extension of the bilateral knees through each stride, however, he favored the left knee and attempted to keep the left knee from fully extending throughout the stride. It was noted that this usual occupation was as a financial officer/loan underwriter, and he was currently unemployed. He stated he was unable to find work because the financial sector was so depressed and no one was hiring. He did not feel capable of performing manual labor. The diagnosis was degenerative arthritis of both knees. It was noted that his bilateral knee pain affected his occupational activities, and that his knee condition had a moderate effect on sports and exercise, and a mild effect on chores, shopping, recreation, and traveling. The examiner opined that the Veteran's service-connected bilateral knee condition did not prevent him from performing the mental and/or physical tasks required to get or keep gainful employment. For rationale, the examiner noted that although the Veteran walked with a limp and had obvious bilateral knee pain with use, he was medically qualified to continue to perform the sedentary work he had been performing for over 31 years. The examiner also noted that the Veteran had full range of knee motion, albeit painful, without significant loss of muscular strength, and that the Veteran reported giving away with falling due to his knee condition, however, this would not preclude sedentary work. It was also noted that the Veteran should not perform manual labor or spend prolonged periods on his feet (greater than 30 minutes), and that he should not work in a hazardous environment where falling could compromise his safety or the safety of his co-workers. MRI reports showed bilateral degenerative meniscal tears, patellar tendinosis on the left, chondral degeneration bilaterally, and a tiny Baker's cyst on the left. 

On a VA examination in October 2014, the diagnoses included chondromalacia patella of both knees, diagnosed in 1974; meniscal tears, bilateral knees, diagnosed in 2009; and degenerative arthritis, bilateral knees, diagnosed 2012. The Veteran reported he had knee braces, but claimed they did not stay up and ended up hurting more than helping. He reported he had asked for surgery, but just kept getting Vicodin. He worked at home where his office was in the basement, with 15 steps to go to work, and reported it was painful after going up and down stairs throughout the day. He reported constant knee pain, and that his knees sometimes gave out, but he did not fall. He indicated this affected his daily activities because he did not want to run because his knees would hurt. He reported he could walk, but had to rest because his knees would hurt. He indicated he was not completely incapacitated, but he did not do any physical exercise like bike riding, but did do knee exercises. For treatment he did leg lifts with stretch bands and used Hydrocodone as needed. The Veteran reported he was employed full time as a mortgage underwriter for the past 25 years, and did not want to pursue individual unemployability because he had a good job and hoped it would last. He reported flare-ups that impacted functioning of his knees, stating that in cold, damp weather he had excruciating pain and had to sit down and rest. 

Range of motion testing of both knees revealed flexion ended at 140 degrees and extension ended at 0 degrees, with no objective evidence of painful motion. The Veteran did not have additional limitation in range of motion in either knee after repetitive-use testing. There was no functional loss or impairment in either knee, and no tenderness or pain on palpation of the knee joints. Muscle strength of the knees was normal. Joint stability tests for both knees were normal, and there was no evidence or history of recurrent patellar subluxation or dislocation. It was noted that the Veteran had meniscal tears in both knees, but had not had a meniscectomy. The examiner noted that the Veteran had a normal gait, moved easily in and out of chairs, and on and off the examination table. The VA examiner indicated that the Veteran's right and left knee functioning was not so diminished that amputations with prosthesis would equally serve him. X-rays showed osteoarthritis of both knees, without significant joint effusion. The examiner opined that the Veteran's bilateral knee conditions impacted his ability to work, in that he had to avoid repetitive bending, kneeling, prolonged walking, or standing. The examiner noted that in 2009 the Veteran was found to have meniscal tears by MRI, and in 2012, he was found to have arthritis of his knees, and these changes were found to be related to degenerative changes from aging and life style, and not related to chondromalacia. The examiner indicated that to provide an opinion as to whether pain, weakness, fatigability, or incoordination could limit functional ability during flare-ups, or when used repeatedly over time, would not be feasible as it would be mere speculation on the part of the examiner who had not seen the Veteran during a flare-up. The examiner also opined that the Veteran would be able to work at a sedentary job and that his service-connected knee disabilities were not so disabling as to render him unemployable. It was noted that he worked from home for a mortgage company and had done this type of work for at least 25 years. The examiner indicated the Veteran should avoid repetitive bending and prolonged walking or standing, and should not drive within 12 hours of taking Vicodin. 

VA treatment records showed that in September 2016, the Veteran reported he was getting a raise that year. In February 2017, the Veteran complained of bilateral knee pain, and examination of the knees revealed no effusion and full range of motion. In May 2017, the Veteran reported his knee pain was at level 9 on the pain scale. He also reported his wife had to cut back on her hours for health reasons, and that he was working with his company too. He had received a check from his employer reserved for people going through a predicament. 

On a VA examination in June 2017, it was noted that the Veteran was on Naproxyn and Tramadol as needed for bilateral chondromalacia patella. He denied flare-ups, and also denied functional loss or functional impairment of the knees, including with repeated use over time. Range of motion of both knees was normal, with flexion to 140 degrees and extension to 0 degrees. No right or left knee pain was noted on examination, including no evidence of pain on weight bearing, no objective evidence of tenderness of the knee joint, and no objective evidence of crepitus. He performed repetitive use testing of each knee, with at least three repetitions, with no additional functional loss after three repetitions. The examiner opined that pain, weakness, fatigability, or incoordination did not significantly limit the Veteran's functional ability with repeated use over a period of time. Muscle strength of the knees was normal. There was no history of recurrent subluxation or lateral instability in either knee, and no history of recurrent effusion. Joint stability testing in both knees revealed no joint instability. It was noted that the Veteran regularly used a brace for support of his knees. X-rays revealed mild degenerative changes in both knees. The examiner noted that the Veteran's knee conditions did not impact his ability to perform any type of occupational task. The examiner also noted that there was no evidence of knee pain on passive range of motion testing, and no evidence of pain when the knee joints were non-weight bearing. 

III. Analysis

Disability evaluations are determined by application of the VA Schedule for Rating Disabilities, which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Each disability must be viewed in relation to its history and there must be emphasis upon the limitation of activity imposed by the disabling condition. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

Where entitlement to compensation has been established and a higher initial disability rating is at issue, the level of disability at the time entitlement arose is of primary concern. Consideration must also be given to a longitudinal picture of the veteran's disability to determine if the assignment of separate ratings for separate periods of time, a practice known as "staged" ratings, is warranted. See Fenderson v. West, 12 Vet. App. 119 (1999). Staged ratings are appropriate in any increased rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007).

1. Right Knee and Left Knee Infrapatellar Tendonitis

The Veteran contends he should be entitled to higher ratings for his service-connected right and left knee disabilities. 

The record reflects that a 10 percent rating has been assigned for each knee, pursuant to Diagnostic Code (DC) 5024. 

DC 5024 provides that tenosynovitis is to be rated based on limitation of motion of the affected parts, as degenerative arthritis (except in cases involving gout). 38 C.F.R. § 4.71, DC 5024.

Under DC 5003, degenerative arthritis established by X-ray findings is rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, DC 5003. 

DC 5260 provides for a 10 percent rating when flexion of the leg is limited to 45 degrees. A 20 percent rating is warranted when flexion of the leg is limited to 30 degrees. 38 C.F.R. § 4.71a, DC 5260. 
DC 5261 provides a 10 percent rating when extension of the leg is limited to 10 degrees. A 20 percent rating is warranted when extension is limited to 15 degrees. 38 C.F.R. § 4.71a, DC 5261. 

Full range of motion of the knee is from 0 degrees extension to 140 degrees flexion. 38 C.F.R. § 4.71, Plate II. 

The Veteran contends he should be entitled to ratings in excess of 10 percent for his service-connected right and left knee disabilities. After reviewing the record, which includes VA examinations in 2009, 2014, and 2017, as well as VA and private treatment records, the Board concludes that the preponderance of the competent evidence does not support the grant of ratings in excess of 10 percent for the service-connected right and left knee disabilities. In that regard, while the Veteran has repeatedly complained of right and left knee pain, the limitation of motion recorded in the VA examinations does not meet the requirements for the next higher (20 percent rating) under DC 5260 or DC 5261 as flexion and extension were full on all three VA examinations. Moreover, the Board notes that pain was considered in the assignment of the current 10 percent ratings, in the absence of compensable limitation of motion. See 38 C.F.R. § 4.59. 

The Board has also considered the Veteran's complaints of pain and functional limits. However, the objective evidence does not support a finding that his right and knee pain, full range of knee motion, or pain on motion, have been associated with such additional functional limitation as to warrant increased compensation pursuant to provisions of 38 C.F.R. §§ 4.40, 4.45, or the holding in DeLuca v. Brown, 8 Vet. App. 202 (1995). Rather, the Board finds that his complaints of pain and any functional limitations are contemplated in the current 10 percent ratings assigned. Further, while the Veteran reported having flare-ups on the VA examination in 2014, he denied functional loss or impairment, he did not have additional limitation in range of motion in either knee after repetitive-use testing, and the examiner indicated that to provide an opinion as to whether pain, weakness, fatigability, or incoordination could limit functional ability during flare-ups, or when used repeatedly over time, would not be feasible as it would be mere speculation since the Veteran was not seen during a flare-up. On the VA examination in 2017, the Veteran denied flare-ups and denied functional loss or functional impairment of the knees, including with repeated use over time, and he had no additional functional loss after three repetitions. The examiner opined that pain, weakness, fatigability, or incoordination did not significantly limit the Veteran's functional ability with repeated use over a period of time. Thus, the Board concludes that ratings in excess of 10 percent was not warranted for the service-connected right knee or left knee disability, even with consideration of the provisions of 38 C.F.R. § 4.45 or the holding in DeLuca, as such disability has not been shown to manifest complaints or objective findings or functional impairment that would warrant a rating in excess of 10 percent. Rather, the clinical and reported findings for his service-connected right knee and left knee disabilities more nearly approximated the criteria for a 10 percent rating. 38 C.F.R. § 4.7. 

The preponderance of the evidence therefore reflects that the Veteran's service-connected right and left knee infrapatellar tendonitis have each been no more than 10 percent disabling at any time. The benefit-of-the-doubt rule does not apply, and the claim for a rating in excess of 10 percent for the service-connected right knee and left knee infrapatellar tendonitis must be denied. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, supra.

The Board also notes that DC 5257 provides for a 10 percent rating for slight recurrent subluxation or lateral instability. A 20 percent rating is warranted for moderate recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a, DC 5257. 

A claimant who has arthritis or limitation of motion and instability of a knee, may be rated separately under DCs 5003 and 5257. Any separate rating must be based on additional disabling symptomatology that meets the criteria for a compensable rating. VAOPGCPREC 23-97; VAOPGCPREC 9-98. Separate ratings under DC 5260 for limitation of flexion and DC 5261 for limitation of extension, may be assigned for disability of the same knee; however, any separate rating must be based on additional disabling symptomatology that meets the criteria for a compensable rating. VAOGCPREC 9-2004.

In that regard, the Board notes that in January 2009, the Veteran reported giving away, with falling, due to his knee condition, and in October 2014, he reported his knees sometimes gave out, but he did not fall. He reported wearing knee braces all the time. Thus, the Veteran has submitted competent and credible lay evidence of sometimes feeling that the knee is unstable. However, all three VA examiners affirmatively found that instability and recurrent subluxation were clinically absent, and on the VA examinations, normal results were shown for the joint stability tests. Moreover, none of the three VA examiners found a history of recurrent dislocation, lateral instability, or recurrent subluxation.

The Board finds that the objective medical evidence is more probative than the lay evidence on the issue of instability. Although lay persons are competent to provide opinions on some medical issues, the clinical diagnosis of joint instability falls outside the realm of common knowledge of a lay person. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). In this case, the Veteran reported "giving away" of his knee, and that he had to use braces all the time. However, the Board finds that the diagnosis of joint instability is not within the ability of a lay person to diagnose because a competent medical expert cannot diagnose the Veteran based on reported symptoms alone and requires specialized testing beyond ordinary clinical evaluation. Mattke v. Deschamps, 374 F.3d 667, 670 (8th Cir. 2004) (a diagnosis by laboratory testing is distinctly not within the realm of common lay knowledge). Specifically, joint instability is diagnosed by Lachman's test, drawer test, and varus/valgus test, as conducted by the VA examiners. The Veteran has not contended, nor does the evidence show, that he has the medical expertise required to conduct or interpret such tests. Thus, the Board finds that the Veteran's report of his knees giving away is not a valid lay diagnosis. Accordingly, the Board finds that the Veteran is not entitled to a disability rating under DC 5257.

The Board has also considered where a higher or separate rating may be assigned under either DC 5258 or DC 5259. In that regard, when semilunar cartilage is dislocated with frequent episodes of locking, pain and effusion into the joint, a 20 percent rating is warranted. 38 C.F.R. § 4.71a , DC 5258. When semilunar cartilage has been removed, but remains symptomatic, a 10 percent rating is warranted. 38 C.F.R. § 4.71a, DC 5259. 

The Board acknowledges that on the VA examinations in 2009 and 2014, the Veteran was noted to have meniscal tear. However, the VA examiner affirmatively noted that there has been no meniscectomy (removal of semilunar cartilage), and the Veteran does not contend otherwise. Moreover, on the most recent VA examination there was no finding or diagnosis of semilunar cartilage condition. Based on the foregoing, the Board finds that the Veteran is not entitled to a rating under DCs 5258-5259. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

The preponderance of the evidence therefore reflects that the Veteran's service-connected right knee and left knee infrapatellar tendonitis have each been no more than 10 percent disabling at any time. The benefit-of-the-doubt rule does not apply, and the claim for ratings in excess of 10 percent for the service-connected right and left knee infrapatellar tendonitis must be denied. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, supra.

In the November 2017 Post-Remand Brief, submitted by the Veteran's representative, it was contended that the evaluations in effect for the Veteran's service-connected right and left knee disabilities did not accurately reflect the current severity of his conditions, and that the schedular evaluations were inadequate. He requested consideration of 38 C.F.R. § 3.321(b)(1). In this case, however, the Board concludes that the record does not show that the Veteran's service-connected right and left knee disabilities are so exceptional or unusual as to warrant the assignment of higher ratings on an extra-schedular basis. 38 C.F.R. § 3.321(b)(1).

The threshold factor for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service- connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extra-schedular referral is required. Thun, 22 Vet. App. 111; VAOGCPREC 6-96. Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those marked interference with employment and frequent periods of hospitalization. 38 C.F.R. § 3.321 (b)(1).

The competent evidence in this case, however, does not show such an exceptional disability picture that the assigned schedular evaluations for the service-connected disabilities are inadequate. Specifically, a comparison between the level of severity and symptomatology of the Veteran's service-connected right and left knee disabilities with the established criteria shows that the schedular rating criteria reasonably describe his level of disability. As discussed above, the Veteran's service-connected right and left knee disabilities are manifested by symptoms such as pain, stiffness, tenderness, and flare-ups; these are contemplated by the rating criteria utilized, and the rating criteria provides for higher ratings for more severe symptoms. The Veteran has not complained of and his postservice treatment records and VA examination reports are silent for any complaints not contemplated by the schedular criteria. Thus, the Board finds that the schedular evaluation is not inadequate. As the rating schedule contemplates the disability, referral for extraschedular consideration is not in order.

In addition, a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014). In this case, however, neither the Veteran nor the record has raised this contention. Yancy v. McDonald, 27 Vet. App. 484, 495 (2016). Notably, the Veteran's only service-connected disabilities are for the bilateral knees.


2. TDIU Rating

All veterans who are shown to be unable to secure and follow a substantially gainful occupation by reason of service-connected disability shall be rated totally disabled. For VA purposes, total disability exists when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. §§ 3.340, 4.16(b).

A total disability rating for compensation may be assigned, where the schedular rating is less than total, when a veteran is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). Even when the percentage requirements are not met, entitlement to TDIU on an extraschedular basis may be granted in exceptional cases when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b).

Review of the record shows that service connection is in effect for right knee infrapatellar tendonitis, rated as 10 percent disabling, and left knee infrapatellar tendonitis, rated as 10 percent disabling. The Veteran had a combined disability rating of 20 percent, effective from April 26, 1975, and therefore does not meet the minimum regulatory requirement to be considered for entitlement to a TDIU under 38 C.F.R. § 4.16(a). However, even when the percentage requirements are not met, entitlement to a total rating, on an extraschedular basis, may be granted, in exceptional cases, when a veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disability. 38 C.F.R. §§ 3.321(b), 4.16(b). 

Where, as here, the Veteran fails to meet the threshold minimum percentage standards enunciated in 38 C.F.R. § 4.16(a), rating boards should refer to the Director, Compensation Service for extraschedular consideration all cases where the Veteran is unable to secure or follow a substantially gainful occupation by reason of service-connected disability. 38 C.F.R. § 4.16(b); Fanning v. Brown, 4 Vet. App. 225 (1993). The Board is precluded from granting an extraschedular evaluation in the first instance, but must consider referral. 

After weighing the medical and lay evidence of record, the Board finds that the criteria for referral of TDIU on an extraschedular basis are not met, as the negative evidence of record outweighs the positive evidence of record in support of the TDIU claim. 38 C.F.R. § 4.16(b). In that regard, review of the record shows that the Veteran has been employed full time as a mortgage underwriter for at least 25 years, except for a period of time (noted at the time of the January 2009 VA examination) starting in September 2008 when he was terminated from his position. At that time, however, the Veteran indicated he was unable to find work because the financial sector was so depressed and no one was hiring. Further, on the VA examination in January 2009, the examiner opined that his service-connected bilateral knee condition did not prevent him from performing the mental and/or physical tasks required to get or keep gainful employment, noting that although the Veteran walked with a limp and had obvious bilateral knee pain with use, he was medically qualified to perform the sedentary work he had been performing for over 31 years. The examiner also noted that the Veteran had full range of knee motion, albeit painful, without significant loss of muscular strength, and he reported giving away with falling due to his knee condition, however, this would not preclude sedentary work. It was also noted that he should not perform manual labor or spend prolonged periods on his feet and should not work in a hazardous environment where falling could compromise his safety or the safety of his co-workers. 

In October 2014, the VA examiner opined that the Veteran's bilateral knee conditions impacted his ability to work, in that he had to avoid repetitive bending, kneeling, prolonged walking, or standing, but that he would be able to work at a sedentary job and that his service-connected knee disabilities were not so disabling as to render him unemployable. It was noted that he worked from home for a mortgage company and had done this type of work for at least 25 years. 

VA treatment records also reflect indications of the Veteran's continued employment. In September 2016, he reported to one of his treatment providers that he was getting a raise, and in May 2017, he indicated that his company was working within him in the context of his spouse needing more of his time due to health issues she was dealing with.

Finally, in June 2017, a VA examiner opined that the Veteran's knee conditions did not impact his ability to perform any type of occupational task. 

While acknowledging that the Veteran's knee disabilities and resulting pain do impact his ability to work to some extent, the Board finds that the record does not present sufficient evidence such that referral is required. Review of the foregoing facts, to include the circumstances under which he was out of work for a period of time starting in September 2008, shows that the Veteran has either been employed during the appeal period or that the impairment of his service-connected disabilities did not rise to the level of being unable to secure or follow a substantially gainful occupation. 

Based on the foregoing, the Board finds that criteria for referral of the case to the Director of Compensation Service for extraschedular evaluation under 38 C.F.R. § 4.16(b) have not been met. In making its determination, the Board considered the applicability of the benefit of the doubt doctrine, however, the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule does not apply, and the claim for a TDIU rating on an extraschedular basis must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet.App. 49, 55 (1990).







 (CONTINUED ON NEXT PAGE)

ORDER

A rating in excess of 10 percent for right knee infrapatellar tendonitis is denied.

A rating in excess of 10 percent for left knee infrapatellar tendonitis is denied.

A TDIU rating is denied.




______________________________________________
A. ISHIZAWAR
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs